IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | |
|---|---|
| SUNDAY ENTERPRISES, INC., )<br>)<br>    Plaintiff,                )<br>)<br>    v.                          )<br>)<br>UNITED RENTALS (NORTH     )<br>AMERICA), INC.,              )<br>)<br>    Defendant.              ) | CIVIL ACTION NO.<br>  1:11cv85-MHT<br>       (WO) |

OPINION

In this lawsuit, plaintiff Sunday Enterprises, Inc. ("SEI"), a swimming-pool construction company, asserts various fraud, negligence, and product-liability claims against defendant United Rentals (North America), Inc. ("United Rentals"), arising out of SEI's purchase of surveying equipment from United Rentals. In addition to responding with an indemnity counterclaim, United Rentals removed this case from state to federal court based upon diversity-of-citizenship jurisdiction, 28 U.S.C. §§ 1332, 1441.

This cause is now before the court on United Rentals' motion for summary judgment in its favor on SEI's claims. Summary judgment is warranted if, after viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in their favor, the court is convinced "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  For the reasons that follow, the court concludes that summary judgment should be entered in favor of United Rentals on all of SEI's claims.[1]

## I. BACKGROUND

2005:  In July 2005, the owner of SEI purchased two brand-new "CST Berger 20X Transit Levels" from United

---

    1.   United Rentals also seeks summary judgment in its favor on its counterclaim.  Whether United Rentals is entitled to summary judgment on its counterclaim will be addressed separately and later.

2

Rentals in Dothan, Alabama.  The sales agreement, which the owner signed, provides that, "Unless United indicates otherwise on the front page of this Sales Agreement, the Equipment is used and was previously rented out by United to numerous persons"; that, "Whether or not the Equipment is used, it is being sold by United 'AS IS', WITH ALL FAULTS"; that "United makes no representation or warranty on any matter whatsoever"; and that "ALL WARRANTIES, INCLUDING ANY IMPLIED WARRANTY OR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE EXPRESSLY EXCLUDED AND DISCLAIMED."  Sales Agreement (Doc. No. 35-3, at 3). The agreement also provides that, "Any oral or other statements that United's employees may have made regarding the Equipment do not constitute warranties, are disclaimed by United, and shall not be relied upon by the Customer." Id.  Despite these disclaimers, United Rentals often sends equipment to manufacturers or other companies for repair or calibration as a service to customers.

Because the pools that SEI built with the CST Berger units were out of level, SEI's owner complained to United Rentals that the units were either defective or needed to be re-calibrated, and, in October 2005, he returned the CST Berger units and obtained two different, more expensive, levels; one was purchased, and the second one was bought on store credit from the return of the CST Berger units. SEI's owner signed another sales agreement identical to the one he had signed before.

During the July and October 2005 purchases, SEI's owner spoke with the same Inside Sales Coordinator, Norman Scott. In the first sale, Scott told the owner that the CST Berger unit was a "good product." Scott was also the one who allowed the owner to return the CST Berger transit levels and use that money towards the purchase of the other two levels. After the October 2005 sale and exchange, Scott told SEI's owner that he was "good to go." But, because he was only a salesman, Scott did not have special expertise in operating transits or levels and

4

would tell customers to follow the manufacturer's instructions when using them.

**2005-2006**:  Between October 2005 and March 2006, SEI had no problems building level pools with the levels purchased at United Rentals.  In March and April of 2006, however, several swimming pools SEI built using levels from the October 2005 purchase were out of level.

In total, SEI built 11 un-level pools using equipment purchased at United Rentals.  Each time a pool was built out of level, SEI's owner discovered the defect contemporaneously with finishing the pool when it was filled with water.  Upon discovering the defect, he would demolish and rebuild each pool.  When rebuilding the pools, he would typically use equipment not purchased at United Rentals.

**2007-2008**:  United Rentals terminated Scott's employment in November 2007.  On December 30, 2008, SEI's owner ran into Scott while shopping at a Wal-Mart.  The owner asked Scott "questions about the levels or transits

and said that he had lost his pool business." Scott Aff. (Doc. No. 35-2, at 4). Scott expressed his sympathies and "commented ... that [he] recalled other customers experiencing problems using some levels," but was referring to a laser level that SEI had never purchased or used. Id. at 5. Scott also indicated that near the end of his tenure at United Rentals he "became uncomfortable selling certain levels." Id. Scott does not recall the exact date he became "uncomfortable," but is certain that this date "was after [his] sales to [SEI]" and swears that he "never sold [SEI's owner] a level or transit where [he] believed there was a problem with the product." Id.

2010-2011: SEI filed this lawsuit in state court on December 29, 2010, and United Rentals removed it to federal court on February 3, 2011.

## II. DISCUSSION

Invoking Alabama law and relying on the two sales in July and October of 2005, SEI charges United Rentals with (1) fraud; (2) deceit; (3) fraudulent misrepresentations; (4) negligence; and (5) violation of the product-liability law, that is, the Alabama Extended Manufacturer's Liability Doctrine.  nited Rentals seeks summary judgment in its favor on all of SEI's claims, with its primary defense being that the claims are barred by Alabama's statute of limitations.  United Rentals also seeks summary judgment in its favor on its counterclaim for indemnification.  The court agrees that, under Alabama law, the time for bringing SEI's claims had expired when SEI filed its complaint in state court in December 2010.

All of the claims asserted in SEI's complaint come with a two-year statute of limitations.  See 1975 Ala. Code § 6-2-38(l); Spain v. Brown & Williamson Tobacco Corp., 872 So.2d 101, 112 (Ala. 2003).[2]  The principal

---

2. Section 6-2-38(l) of the 1975 Alabama Code (continued...)

issue here is when that statute of limitations begins to run.

As a general matter, under Alabama law, where "the act of which the injury is the natural sequence is itself a legal injury to the plaintiff, a completed wrong, the cause of action accrued and the statute begins to run from the time the act is committed, be the actual damage [then apparent] however slight."  McWilliams v. Union Pac. Res. Co., 569 So.2d 702, 703 (Ala. 1990) (internal quotes and citations omitted) (bracketed part in original).  For fraud-related claims, however, Alabama law sometimes permits tolling of the accrual date until a later moment of "discovery."  1975 Ala. Code § 6-2-3.[3]

---

2.  (...continued)
provides that, "All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."

3.  Section 6-2-3 fo the 1975 Alabama Code provides that, "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, (continued...)

The parties agree that § 6-2-3's "discovery rule" does not apply to SEI's negligence and product-liability claims.  See Russell Petroleum Corp. V. Environ Prods., Inc., 333 F. Supp. 2d 1228, 1232 (M.D. Ala. 2004) (Thompson, J.); Singer Asset Finance Co., LLC v. Conn. Gen. Life Ins. Co., 975 So.2d 375, 382 (Ala. Civ. App. 2007).  The court therefore addresses these counts first.

Taking the two 2005 purchases together, United Rentals argues that any legal injury accrued in 2005 and 2006 when SEI built out-of-level pools with equipment purchased from United Rentals.  United Rentals emphasizes that, in each instance, both in October 2005 (when SEI, after building out-of-level pools, returned the CST Berger units purchased in July 2005) and then again in March and April of 2006 (when several swimming pools SEI built using levels from the October 2005 purchase were out of level), SEI's owner realized the pools were un-level.  Thus,

---

3. (...continued)
after which he must have two years within which to prosecute his action."

United Rentals contends, any possible legal injury or harm associated with transits and levels was known to SEI in 2005 and 2006 at the time it filled the pools with water, which was essentially contemporaneous with building the pool.  Because this lawsuit was not filed until December 2010 (from four to five years after the construction of out-of-level pools), there is no possible way, United Rentals argues, this lawsuit can come within the two-year statute of limitations.  The court holds that any reasonable factfinder would have to agree with United Rentals.

Admittedly, Alabama law recognizes that in many instances a legal injury might not be immediately apparent when the "act complained of" occurs and further recognizes that the plaintiff's injury may only come "as a result of, and in furtherance and subsequent development of, the act defendant has done."  Ex parte Floyd, 796 So.2d 303, 308 (Ala. 2001) (internal quotes and citations omitted).  In such a case, an action accrues when "the first indication

of damage becomes apparent to the claimant." CertainTeed Corp. v. Russell, 883 So.2d 1266, 1269 (Ala. Civ. App. 2003); see, e.g., Russell, 333 F. Supp. 2d at 1232-33 (describing injuries that come from subsequent developments, like defective pacemakers, radiation, and asbestos).  This rule pushes the accrual date beyond the moments United Rentals sold the levels to SEI in July and October 2005, but, notably, United Rentals does not even contend that SEI's claims accrued at the time of sale; instead, and implicit in United Rentals' argument, is a recognition of the fact that the "subsequent development" that demonstrated a legal injury was the moment that SEI realized that pools built with equipment from United Rentals were out of level.  More concretely, a reasonable factfinder would have to conclude that any legal damage traceable to United Rentals' sale of the levels was readily apparent the moment SEI's owner saw the un-level pool water and subsequently demolished and rebuilt the

pool, especially given that he did so with different levels.

Therefore, any injury or legal harm resulting from the sale of the equipment in July and October of 2005 occurred, at the latest, in March or April of 2006 when SEI used this equipment to build out-of-level pools. Beyond the dissatisfaction of having a pool built out-of-level (as SEI makes clear in its claim for damages), tearing down and rebuilding each pool was a costly endeavor, which endeavor would be evidence of a quintessential "legal injury."

To avoid this conclusion, SEI argues that a later accrual date applies here because even in non-fraud actions, Alabama recognizes that a "plaintiff's ignorance of the tort or injury" can delay the accruing of claims if there has been "fraudulent concealment by defendant." McWilliams, 569 So.2d at 703-04 (internal quotes and citations omitted).  SEI contends the Wal-Mart conversation between SEI's owner and Scott revealed that

12

"fraudulent concealment" had happened in the 2005 sales. The court cannot agree. SEI misses the fact that the "fraudulent concealment" exception refers to concealing either that the cause of action exists or trying to hide the injury itself. See DGB, LLC v. Hinds, 55 So.3d 218, 224-26 (Ala. 2010). The Wal-Mart meeting does not reflect that United Rentals concealed either a cause of action or any injury; indeed, because SEI's owner knew of any possible injury from the first sale in 2005 when he returned the CST Berger units in October of that year and because he knew of any possible injury from the second, October 2005 sale when, in March and April of 2006, he built un-level pools using the levels from that sale, the Wal-Mart meeting added nothing.

As to the fraud claims, SEI argues that the "discovery rule" of § 6-2-3 of the Alabama Code should apply. Again, the Wal-Mart conversation between Scott and SEI's owner is the basis for this argument. SEI contends that it did not learn of United Rentals' possible misrepresentations,

13

fraud, or deceit until December 30, 2008, when Scott told SEI's owner that he had become "uncomfortable" selling certain levels.  However, even though Scott was actually referring to levels he sold not to SEI but others, SEI contends that this is the moment it "discovered" United Rentals' fraud.  To be sure, if the statute of limitations had begun to run on this date, the complaint would have been timely.

The court cannot agree that the accrual date should be set this far removed from the July and October 2005 purchase dates or from the numerous times in 2005 and 2006 when SEI built out-of-level pools with equipment purchased at United Rentals; nor is the court convinced that § 6-2-3's discovery rule applies here.  In Alabama, the "reasonable reliance" standard applies to § 6-2-3, Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala. 1997), which "standard requires the buyer to act reasonably to discover fraud."  Id. at 438 (See, J., concurring).  Thus, a fraud claim accrues "when the

plaintiff discovered the fraud or when the plaintiff should have discovered the fraud in the exercise of reasonable care." Id. at 417 (majority opinion). Under this standard, "where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms," a court may enter judgment as a matter of law against them. Id. at 421.

SEI does not maintain that any documents (including United Rentals' sales agreements) were fraudulent; instead, SEI argues that Scott's July 2005 comments to the effect that GST Berger levels are "good products" and his October 2005 statement that SEI's owner would be "good to go" were false, deceptive, and fraudulent misrepresentations. Cf. Ex Parte Seabol, 782 So.2d 212, 216-17 (Ala. 2000) (looking to oral representations in addition to the words of the relevant documents).

15

Relying on the reasonable-reliance standard, the court rejects for two reasons SEI's invocation of § 6-2-3's discovery rule.  First, the evidence is insufficient to support a finding that United Rentals committed any actionable fraud to be discovered.  The sales agreements that came with each of SEI's 2005 purchases expressly provided that any "oral or other statements that United's employees may have made," Sales Agreement (Doc. Nos. 35-3, at 3, 34-4, at 3), do not constitute warranties or guarantees about the products.  Therefore, Scott's general statements at the time of the sales, even if the statements were contrary to the agreements, could not constitute fraud, for SEI expressly agreed not to rely on the statements of salespersons.  See, e.g., Alabama Psychiatric Servs., P.C. v. 412 South Court Street, LLC, ___ So.3d ___, 2011 WL 4507364, at *6-7 (Ala. Sep. 30, 2011) (discussing the elements of fraudulent misrepresentation and the showing required for a claim to be a "false representation"); Gant v. Azalea City Credit Union, ___ So.3d ___, 2011 WL 835100, at *2-3 (Ala. Civ.

App. Mar. 11, 2011) (describing the reasonable reliance standard and a plaintiff's duty to read, inquire about, and investigate the documents received in connection with a particular transaction).

Second, even if one or both of Scott's statements at the time of the 2005 sales could support an actionable fraud claim despite the disclaimers in the sales agreements, the statements still could not provide a basis for invoking the discovery rule.  It cannot be overlooked that SEI's owner was fully aware of the problems with the levels when he built out-of-level pools in 2005 and 2006, especially given that SEI employees fell-back on other, older level equipment to rebuild the pools.  A reasonable factfinder would have to conclude that SEI knew, or should have known, that everything was not as "good" as Scott boasted in 2005 when, in 2005 and 2006, the equipment SEI purchased from United Rentals resulted in out-of-level pools.  SEI's reliance on these statements, assuming any broad reliance on them was initially reasonable, dissipated with the building of the out-of-level pools.

17

**No reasonable factfinder could find that § 6-2-3's discovery rule applies here.**

**\*\*\***

**Because a reasonable factfinder would have to conclude that all of SEI's claims accrued in April 2006 if not earlier and because this lawsuit was filed over four years later, SEI's claims are barred by the applicable the two-year statute of limitations.  United Rentals is entitled to summary judgment on all of SEI's claims.  An appropriate judgment will be entered.**

   DONE, this the 14th day of October, 2011.

                    /s/ Myron H. Thompson
              **UNITED STATES DISTRICT JUDGE**